George Curtis COOKE, Jr. (a/k/a/ Paul William Scott), Petitioner,

v.

Harry K. SINGLETARY, Secretary, Florida Department of Corrections, Respondent.

No. 94–2367–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Nov. 15, 1994.

Martin J. McClain, Chief Asst. CCR, Office of the Capital Collateral Representative, Tallahassee, FL, for petitioner.

Cecilia Terenzio, Asst. Atty. Gen., West Palm Beach, FL, for respondent.

## MEMORANDUM ORDER

K. Michael Moore, District Judge.

**THIS CAUSE** came before the Court upon Petitioner's [1] petition for writ of habeas corpus (November 10, 1994). Having reviewed the record, considered the argument of counsel, and been advised on the premises, the Court **DISMISSES** Petitioner's petition for the reasons expressed below.

1. The Court will refer to Petitioner as "Scott" rather than "Cooke."

## I. Procedural background

### A. Prior and concurrent proceedings in Florida courts and federal courts within the Eleventh Circuit

Petitioner Paul Scott is under sentence of death for the December 1988 murder of James Alessi.[2] A jury returned a general verdict of guilty against Scott after being instructed on premeditated murder and felony murder charges. Upon the jury's recommendation, the state trial court imposed the death penalty. Scott took a direct appeal of his conviction and sentence to the Supreme Court of Florida. The Florida Supreme Court denied his appeal as well as a subsequent state habeas petition. The State then scheduled Scott's execution on June 7, 1983. Scott filed his federal petition for habeas corpus on that same day, and this Court stayed his execution.

Five years passed. During that time, this Court stayed its own proceedings so that Scott could exhaust his state remedies with respect to certain claims. After the Florida Supreme Court rejected these claims, this Court denied habeas relief. *Scott v. Dugger,* 686 F.Supp. 1488 (S.D.Fla.1988). The Court of Appeals affirmed this decision in a per curiam opinion. *Scott v. Dugger,* 891 F.2d 800 (11th Cir.1989) (per curiam), *cert. denied,* 498 U.S. 881, 111 S.Ct. 224, 112 L.Ed.2d 179 (1990).

Florida's Governor rescheduled Scott's execution for October 30, 1990. One day prior to that date, Scott obtained a stay of execution from the Florida Supreme Court so that his new counsel could file a petition for post-conviction relief with the state trial court. The Florida Supreme Court affirmed the subsequent denial of post-conviction relief, as well as another state petition for writ of habeas corpus, in 1993. *Scott v. Dugger,* 634 So.2d 1062 (Fla.1993) (per curiam). After a clemency hearing was held on September 14, 1994, the Governor signed a death warrant

2. The facts of Scott's crime are set forth in the Court's denial of his petition for writ of habeas corpus six years ago. *Scott v. Dugger,* 686 F.Supp. 1488, 1494–96 (S.D.Fla.1988).

scheduling Scott's execution for November 16, 1994.

Scott returned to this Court on October 28, 1994, moving to reopen the Court's 1988 denial of his habeas petition. The Court denied Scott's motion, and the Eleventh Circuit affirmed. *Scott v. Singletary*, 38 F.3d 1547 (11th Cir.1994) (*Scott II* ). Scott also asked the Eleventh Circuit to recall the mandate it issued after its 1989 affirmance of this Court's decision. The Eleventh Circuit denied this motion. *Id.* Finally, Scott has asked the courts of the State of Florida to vacate the judgment and sentence entered against him because of new claims he has raised. The state trial court denied this request, and the Florida Supreme Court has yet to rule on Scott's appeal.

### B. The instant petition

Scott's current petition attacks only his death sentence. During Scott's sentencing-phase trial, the court instructed the jury that, in determining whether to recommend the death penalty, it could consider the fact that Scott previously had been convicted for committing a violent felony. *See* November 10, 1994 Petition for Habeas Corpus at 2 n. 1. This prior offense was a 1975 California conviction for second degree murder, to which Scott had pled guilty.[3] Scott now claims that his 1975 conviction was invalid because his guilty plea was not knowing and voluntary. He argues that his death sentence is invalid because the jury wrongly relied upon the 1975 conviction as a basis for recommending death.[4]

Scott initiated this challenge on October 26, 1990, when he asked a California trial court to vacate the 1975 conviction or to issue a writ of habeas corpus. The trial court denied relief, and a California appellate court

and the California Supreme Court affirmed this decision.

Three years later, in July 1994, Scott filed a petition for habeas corpus with the United States District Court for the Central District of California. On November 4, 1994, a magistrate recommended dismissal of Scott's petition for lack of subject matter jurisdiction. The district court has not ruled on whether it shall adopt or reject this recommendation, so Scott's petition remains pending with that court.[5]

Scott filed this, his second federal habeas petition directed against his death sentence, with the United States District Court for the Middle District of Florida on November 10, 1994. A judge in that district transferred the case to this Court on the same day. This Court immediately ordered expedited briefing and heard oral argument on Scott's petition on November 14, 1994.

## II. Discussion

### A. Does this Court have subject matter jurisdiction to consider Scott's attack of his 1975 conviction?

■ Section 2254(a) of the habeas statute, 28 U.S.C. §§ 2241–55, grants federal courts jurisdiction to entertain petitions for writ of habeas corpus in behalf on any person "in custody" as a result of a violation of his or her federal rights. Scott's sentence for his 1975 conviction has expired, raising the question of whether he remains "in custody" for the purpose of challenging that conviction.

Scott suggests that he is "in custody" with respect to the 1975 conviction because the jury may have used that conviction to "enhance" his current sentence of death. Scott's Reply at 4. He is correct. The Eleventh Circuit has held that a person is "in custody" under a prior, expired conviction if that con-

---

3. Scott was on parole from this offense when he allegedly murdered Alessi.

4. Another aggravating circumstance that the jury considered was the fact that Scott had murdered Alessi while on parole for the 1975 conviction. To the extent that the 1975 conviction is invalid, Scott argues that it was improper to instruct the jury as to this additional aggravating circumstance. The Court finds it unnecessary to decide this question for purposes of the instant petition.

5. The pendency of that the California petition does not prevent this Court from proceeding in this action. The State of Florida is not a respondent in that action. Further, the court there is reviewing only Scott's 1975 conviction. The 1979 Florida conviction for the murder of Alessi is not before that court.

viction has been used to enhance a current, unexpired sentence under another conviction. *Harper v. Evans,* 941 F.2d 1538, 1539 (11th Cir.1991) (per curiam); *Battle v. Thomas,* 923 F.2d 165, 166 (11th Cir.1991); *see also Custis v. United States,* —— U.S. ——, ——, 114 S.Ct. 1732, 1739, 128 L.Ed.2d 517 (1994). This Court thus has subject matter jurisdiction under section 2254(a) to consider Scott's petition.

### B. Is Scott's petition barred as an abuse of the writ?

■ This being Scott's second petition for writ of habeas corpus, it is subject to dismissal if it is an abuse of the writ. 28 foll. U.S.C. § 2254, Rule 9(b). "Where abuse of the writ has been pleaded [by a respondent] as a defense to a claim, the district court *must* decide whether the abuse of the writ doctrine bars relief before it decides the claim on the merits." *Macklin v. Singletary,* 24 F.3d 1307, 1310 (11th Cir.1994); *Sawyer v. Whitley,* —— U.S. ——, ——, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992) (citation omitted) ("Unless a habeas petitioner shows cause and prejudice, a court may not reach the merits of ... new claims, not previously raised which constitute an abuse of the writ"). A district court need not conduct an evidentiary hearing "if [it] determines as a matter of law that" a petition is abusive and that a failure to reach the merits will not result in a miscarriage of justice. *McCleskey v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991).

"Under abuse of the writ doctrine," a court ordinarily must "decline to entertain a second or subsequent habeas corpus petition that raises a claim that the petitioner did not raise in a prior petition." *Burger v. Zant,* 984 F.2d 1129, 1132 (11th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 141, 126 L.Ed.2d 104 (1993). Although the state has the burden of pleading abuse of the writ, this burden is not a heavy one: the state "need only recount the petitioner's writ history, identify claims not raised before the instant petition, and allege that the petitioner abused the writ." *Id.*

Since it is undisputed that the State has met its burden in this regard, "the burden to disprove abuse ... becomes petitioner's." *McCleskey,* 499 U.S. at 494, 111 S.Ct. at 1470 (1991). "To excuse his failure to raise [a] claim earlier, [a petitioner] must show cause for failing to raise it and prejudice therefrom." *Id.* Even if petitioner cannot show cause and prejudice, "the failure to raise [a] claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim." *Id.* The Supreme Court has made clear that this "miscarriage of justice" exception applies only in very narrow circumstances, such as when a petitioner is "actually innocent" of a crime or his or her sentence. *Sawyer v. Whitley,* —— U.S. at ——, 112 S.Ct. at 2519 (1992).

### 1. Cause and prejudice

■ Scott asserts that he has established cause and prejudice for his failure to attack the 1975 conviction in his first petition. The "cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court." *McCleskey,* 499 U.S. at 493, 111 S.Ct. at 1470 (quotation omitted). The prejudice standard requires a petitioner to "show 'actual prejudice' resulting from the errors of which he complains." *Id.*

Scott attacks his 1975 guilty plea on three grounds: (1) that his attorney failed to inform him of the elements of the crime to which he was pleading; (2) that his attorney failed to inform him of a viable duress defense to the charges pending against him; and (3) that he lacked sufficient intelligence to competently enter into the plea.

It is clear from the face of Scott's pleadings that his failure to attack the 1975 conviction in his first habeas petition was a result of his first habeas counsel's failure (Paul Morris) to investigate the circumstances surrounding Scott's guilty plea. Scott's current petition openly acknowledges that, "[p]rior to Mr. Morris' withdrawal, neither he nor Mr. Cooke's trial counsel had conducted any inquiry into the validity of Mr. Cooke's California conviction." November 10, 1994 Habeas Petition at 9. It further concedes that "Mr.

Morris and Petitioner's trial counsel had no tactical or rational reason for failing to conduct such an inquiry and their failing was contrary to Mr. Cooke's express desire that all avenues of relief be pursued on his behalf." *Id.* Finally, Scott's reply brief states that Scott's first habeas counsel has admitted that he provided an "ineffective performance in failing to challenge the California prior conviction." Scott's Reply at 13; *see also* Exh. 12 to Scott's 1994 Habeas Petition (affidavit of Paul Morris).

Such a failure to investigate cannot qualify as cause for a second petition. *Cf. Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991) (no constitutional right to counsel in habeas proceedings). The abuse of the writ doctrine serves to encourage *"prompt investigation* and the full pursuit of habeas claims in the first petition." *McCleskey*, 499 U.S. at 500, 111 S.Ct. at 1473–74 (emphasis added). Indeed, "[t]he requirement of cause ... is based on the principle that petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition." *Id.* at 498, 111 S.Ct. at 1472. It thus would contravene the very purpose of the abuse of the writ doctrine to allow Scott's attorney's failure to investigate to excuse Scott's omission of his latest claim from his first habeas petition.[6]

Recognizing this, Scott argues that neither he nor his first habeas counsel was principally at fault for his counsel's failure to investigate the invalidity of the 1975 conviction. Instead, he claims, it was the *State's* fault because "petitioner was burdened by two State-imposed impediments" during the investigation of his first habeas petition. Scott's Reply at 14. The first of these alleged impediments was the failure of the courts of Florida to permit Scott to challenge his prior convictions in Florida, rather than California. *Id.* The second alleged impediment was the State of Florida's failure to

fund Scott's pro bono counsel in the same manner that it funded state-appointed lawyers.

These claims—which Scott makes in less than two paragraphs of his 31-page reply brief and supports with nothing more than one perfunctory citation—are easily disposed of. First, Florida courts acted well within their authority in requiring Scott to turn first to California (or federal) courts to overturn a conviction obtained there. *See Mann v. State*, 482 So.2d 1360, 1361 (Fla.1986) (requiring petitioner to attack Mississippi conviction elsewhere). Requiring Scott to bring his claims in the court of conviction serves the same goals as the analogous procedural default and exhaustion rules enforced by federal courts. It is no "impediment" under the cause standard.

Second, it is not arbitrary and capricious for the State of Florida to fund a capital collateral program staffed with attorneys specializing in capital habeas review while not providing similar funding for pro bono counsel. *See* Fla.Stat.Ann. §§ 27.7001–27.708. This funding scheme is a rational means of encouraging indigent defendants to use attorneys who likely are the persons best capable of attacking their convictions, to control program costs and expenses, and to ensure proper oversight of attorneys handling capital habeas cases.

Scott thus has failed to demonstrate cause for not attacking his 1975 conviction in his first habeas petition.

### 2. Miscarriage of Justice/Actual Innocence

■ Scott also claims that it would be a miscarriage of justice for this Court not to hear the merits of this late challenge to his 1975 conviction because he is actually innocent of the death penalty. A petitioner can establish his or her "actual innocence" of the death penalty only if "it cannot be said that a reasonable juror would not have found [all] of the aggravating factors which make [a] peti-

---

**6.** Scott's omission is even less forgivable given that this Court provided him with ample opportunity to raise all claims in his first petition for habeas corpus. In a January 10, 1984 Order, the Court stayed its proceedings so that Scott could exhaust "each and every and all claims not previously heretofore presented to the Florida state courts." *Scott*, 686 F.Supp. at 1500. These proceedings remained stayed for five years, while Scott pursued numerous new claims with the Florida state courts.

tioner eligible for the death penalty." *Sawyer,* —— U.S. at ——, 112 S.Ct. at 2524. In other words, a petitioner must show that, "but for the alleged constitutional error, the sentencing body *could not* have found [Scott eligible under] *any* aggravating factors." *Johnson v. Singletary,* 991 F.2d 663, 668 (11th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 113 S.Ct. 2049, 124 L.Ed.2d 70 (1993).

Scott cannot meet this very demanding standard. In addition to the two aggravating factors based on the 1975 conviction, the jury was instructed that it could consider the following two aggravating factors: (1) whether Scott's crime was heinous, atrocious or cruel; and (2) whether Scott's murder had been committed in the course of a robbery and/or burglary for pecuniary gain. Because a jury could have convicted Scott under either of these two aggravating circumstances, Scott cannot demonstrate actual innocence of the death penalty.

### a. Heinous, atrocious or cruel

In Scott's motion to reopen this Court's 1988 judgment and his motion for the Eleventh Circuit to recall the mandate, Scott asserted that the heinous, atrocious or cruel instruction (the "HAC" instruction) was unconstitutionally vague and, therefore, was improperly considered by the jury. Working from this premise, Scott infers that he could not have been "eligible" for death under the HAC aggravating circumstance. Scott's Reply at 19.

The opinion of a majority of the panel in *Scott II* has undermined this argument. Judge Anderson, in a special concurrence in which Judge Dubina concurred, determined that the definition of "cruel" in Scott's HAC instruction was not unconstitutionally vague. *Scott II,* 38 F.3d at 1551–52. He then concluded that:

> [i]n Scott's case, the particular facts persuade me that there is no reasonable doubt but that the jury would have applied the cruel definition to the exclusion of the vaguer heinous and atrocious definitions. My reason is that the facts of the instant

murder constitute overwhelming evidence of a "high degree of pain" and "utter indifference to the suffering of others." In other words the facts clearly focused the jury on the high degree of pain and the utter indifference of Scott to the victim's suffering.... The jury having heard those facts and the instruction which was given, I readily conclude, to a high degree of certainty, that the jury applied the more specific cruel definition.... Although it is clear that the entire heinous, atrocious or cruel instruction was deficient, it is far from clear that the jury relied upon the unconstitutionally vague portion; indeed, I conclude (with a high degree of certainty) quite the contrary.

*Id.* at 1552. Judge Anderson concluded that "[g]rant of the writ in this case would be futile, because the overwhelming evidence indicates clearly that the Florida Supreme Court would exercise its review function to conclude that the deficiency in the [HAC] instruction in this case was harmless beyond a reasonable doubt." *Id.* at 1552–53.

This special concurrence, which represents the panel's majority view [7], makes clear that Scott was eligible for death under the HAC circumstance.

### b. Murder committed in the course of a robbery

Scott contends that this aggravating circumstance is, by itself, insufficient to render him eligible for the death penalty. Reply at 21–27.

■ This argument suffers from two defects. First, as discussed above, this was not the only aggravating circumstance under which Scott was eligible for death. Second, the Eleventh Circuit, has held that this aggravator is a constitutionally acceptable aggravating circumstance. *Johnson v. Singletary,* 991 F.2d at 668–69; *Johnson v. Dugger,* 932 F.2d 1360, 1368–70 (11th Cir.), *cert. denied,* 502 U.S. 961, 112 S.Ct. 427, 116 L.Ed.2d 446 (1991). Scott need only be eligible under one statutory aggravating circumstance to disentitle him from claiming his actual innocence of the death penalty. *John-*

---

**7.** Judges Hatchett and Dubina formed a majority on a separate question in *Scott II (i.e.,* whether

Scott had presented a particular challenge to his jury instruction in his first habeas petition).

son v. Singletary, 938 F.2d 1166, 1180–81 (11th Cir.) (en banc), cert. denied, —— U.S. ——, 113 S.Ct. 361, 121 L.Ed.2d 274 (1992).

Scott acknowledges as much but argues that the Florida Supreme Court, in conducting a proportionality review of his sentence, would vacate his death sentence if the "commission of a felony" aggravator were unaccompanied by another statutory aggravating circumstance. This contention misapprehends the "eligibility" inquiry under the actual innocence test. Scott has identified no case in which the Florida Supreme Court has stated that the "murder committed during a robbery" aggravator can never, under any circumstances, be sufficient to support a death sentence by itself.[8] In fact, the Florida Supreme Court has held the opposite, for it has affirmed a death penalty which was supported by only the "commission during a robbery" aggravator. Armstrong v. State, 399 So.2d 953, 963 (Fla.1981), habeas corpus granted on other grounds, 833 F.2d 1430 (11th Cir.1987) ("The trial judge erroneously considered certain circumstances as aggravating. The error did not impair the process of weighing the aggravating against the mitigating circumstances because there were no mitigating circumstances to weigh. The killings took place in the course of a robbery. Death is the appropriate punishment."). It is true that the Florida Supreme Court has held this aggravator to be a relatively weak aggravating circumstance which is easily outweighed by mitigating circumstances in its proportionality review. See, e.g., Young v. State, 579 So.2d 721, 724 (Fla.1991), cert. denied, —— U.S. ——, 112 S.Ct. 1198, 117 L.Ed.2d 438 (1992); Lloyd v. State, 524 So.2d 396, 403 (Fla.1988). However, for the purpose of determining whether Scott is eligible for the death penalty, this Court may not guess as to how either a jury or the Florida Supreme Court would weigh a valid aggravating circumstance against mitigating circumstances. See Johnson (Marvin), 938 F.2d at 1182, 1183. Once this Court determines that the Florida Supreme Court could find Scott's

sentence to be proportional even if it was based only the "commission of a felony" circumstance, the actual innocence inquiry is at an end. See Id. at 1183 (petitioner must show that jury "would have lacked the discretion to award the death penalty" to establish actual innocence).

Scott thus has failed to meet the requirements of the miscarriage of justice exception to the abuse of the writ doctrine.

### III. Conclusion

Scott's second petition is barred as an abuse of the writ. Accordingly, the Court may not reach the merits of his petition and need not conduct an evidentiary hearing. McCleskey, 499 U.S. at 493–95, 111 S.Ct. at 1470. Scott's petition is dismissed.

**DONE AND ORDERED.**

---

**8.** Scott cites Proffitt v. State, 510 So.2d 896, 898 (Fla.1987), for this proposition. A subsequent decision by the Florida Supreme Court, however, has interpreted Proffitt to stand only for the proposition that the "murder committed during rob-

bery" aggravator is a weak (but not irrelevant) aggravating circumstance which can be outweighed by mitigating circumstances. Young v. State, 579 So.2d 721, 724 (Fla.1991).