528 So.2d 1176 (1988)
Ted HERRING, Petitioner,
v.
Richard DUGGER, Respondent.
No. 70185.
Supreme Court of Florida.
June 23, 1988.
Rehearing Denied August 25, 1988.
Jeremy G. Epstein, Dennis P. Orr, Kenneth A. Freeling, James P. Bodovitz and David Sorokoff of Shearman & Sterling, New York City, for petitioner.
Robert A. Butterworth, Atty. Gen. and Ellen D. Phillips, Asst. Atty. Gen., Daytona Beach, for respondent.
PER CURIAM.
Ted Herring petitions this Court for a writ of habeas corpus, seeking vacation of his first-degree murder conviction and death sentence on the principal grounds of ineffective assistance of appellate counsel. We have jurisdiction. Art. V, § 3(b)(7), (9), Fla. Const. We deny the writ.
Herring was convicted of armed robbery and first-degree murder, and the trial judge, in accordance with the jury recommendation, imposed the death sentence. This Court affirmed that conviction and sentence in Herring v. State, 446 So.2d 1049 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984). Subsequently, Herring brought postconviction relief proceedings under Florida Rule of Criminal Procedure 3.850, and we affirmed *1177 the trial court's denial of relief. See Herring v. State, 501 So.2d 1279 (Fla. 1986).
Herring, by this habeas corpus petition, seeks vacation of the conviction and sentence or, in the alternative, requests a life sentence, a new sentencing hearing, or a new appellate review of the sentencing proceedings. He claims that appellate counsel was ineffective in failing to either raise or adequately address the following nine issues: (1) the admission in the trial's penalty phase of statements Herring made to a probation officer while in custody; (2) the admission of Herring's confession; (3) the improper use by the trial court of two aggravating circumstances because they were based on one aspect of the crime; (4) the jury instructions were constitutionally inadequate; (5) the trial court improperly applied a nonstatutory aggravating circumstance; (6) a juror was improperly excused under Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); (7) the cold, calculated, and premeditated aggravating circumstance does not apply; (8) the elimination-of-a-witness aggravating circumstance does not apply; and (9) counsel failed to file supplemental authority on a significant point of law.
We find that only points (1) and (7) warrant discussion; the remaining points are without merit.
Ineffectiveness of Counsel for Failure to Challenge Admissibility of Statements Made to a Probation Officer
Under this claim, Herring asserts that his appellate counsel was ineffective for failing to address the admissibility of statements made by Herring to a probation officer. Herring was initially arrested for possession of a stolen car at approximately 11:30 a.m. on June 12, 1981. The arresting officer advised Herring that he had the right to remain silent and to have an attorney. Herring was immediately transported to the Volusia County jail, where he was questioned and advised of his Miranda.[*] rights. Herring then executed a written waiver of his rights. Herring did not become a suspect in the homicide until his appearance in a police lineup later that afternoon. Questioning regarding the homicide lasted several hours, during which time he confessed to the homicide. While Herring was in custody, he was repeatedly advised of his rights.
Herring's confession was taped and played to the jury and, in pertinent part, reads as follows:
DETECTIVE WHITE: This will be a continuation into this interview. Subject, Ted Herring has ... two additional comments which he wishes to make to us at this time. The time is now 7:50 p.m. Present in the room [are] Detective Varner, Detective Anderson, Detective White, speaking, and black male, Ted Herring. Mr. Herring, in the last hour or so you apparently have had a change of heart in relation to the offense at the 7-11 on 5/29/81 at 205 South Ridgewood Avenue and you want to make some more comments about that. Can you go ahead and tell us, in your own words, more about what happened ... that morning.
HERRING: Yes, I do. When I went into the 7-11 store that morning, and it was closed and I came back, I went into the store and asked for a pack of cigarettes. He put the cigarettes up on the counter and I asked him for the money. He put, he gave me the money, right, and ...
WHITE: Do you want to go ahead and talk to us about it, Ted?
HERRING: Yeah. What it all boils down to, I shot him.
WHITE: Okay. How about telling us like you told . ..
HERRING: Yeah. Well, I, when I asked for the pack of cigarettes, he told me they was over there in the corner. When I went to turn my head a little bit, I turned back and it looked like he was coming across the counter and I put the gun up to his head and he put his hand up and I shot him.
WHITE: As he put his, which hand up?

*1178 HERRING: He put, I think it was his right, his right hand up, and I shot him. But it was by mistake, I didn't mean to shoot him.
WHITE: Where did you shoot him at that time, Ted?
HERRING: In the head.
WHITE: Did you shoot him again?
HERRING: Yeah. Yes, I did, out of fear I did.
WHITE: Did you shoot him once he was down on the ground?
HERRING: Yeah, when he hit the ground I shot him.
WHITE: Where did you shoot him that time?
HERRING: In the head.
WHITE: What did you use?
HERRING: .22 snubnose.
WHITE: Okay. Before I go any further with this, has, has anyone threatened or coerced you to make these statements to us?
HERRING: No, they haven't.
WHITE: You made them of your own free will and volition?
HERRING: My own free will.
After Herring had been taken into custody and signed the Miranda rights waiver, but while he was still in the county jail, Herring spoke to a probation officer. During the penalty phase, over defense counsel's objection, the probation officer testified that she talked with Herring regarding "the murder of one Dale Hoeltzel at 205 South Ridgewood, Daytona Beach, Florida." She stated, "[Herring] indicated to me that the young man got what he deserved due to the fact that, him trying to play hero. And that it was just one less cracker."
Controlling case law establishes that a warning and waiver of rights given following the arrest for a criminal offense is sufficient to cover any later statements to a law enforcement officer concerning other criminal offenses. Colorado v. Spring, 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987). There is no necessity to continually readvise an individual in custody as to his or her Miranda rights, particularly when the place of custody is the same and the time periods are not remote. Shriner v. Wainwright, 715 F.2d 1452 (11th Cir.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1328, 79 L.Ed.2d 723 (1984); United States ex rel. Henne v. Fike, 563 F.2d 809 (7th Cir.1977), cert. denied, 434 U.S. 1072, 98 S.Ct. 1257, 55 L.Ed.2d 776 (1978); Biddy v. Diamond, 516 F.2d 118 (5th Cir.1975), cert. denied, 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 194 (1976); Maguire v. United States, 396 F.2d 327 (9th Cir.1968), cert. denied, 393 U.S. 1099, 89 S.Ct. 897, 21 L.Ed.2d 792 (1969); Deluca v. State, 384 So.2d 212 (Fla. 4th DCA 1980). It is not disputed that the probation officer talked to Herring concerning the homicide only after Herring had been taken into custody, Miranda warnings had been given, and Herring had executed a waiver of his rights. We find the statement was clearly admissible and, consequently, appellate counsel was not deficient in failing to raise this issue.
Cold and Calculating as an Aggravating Circumstance
Basically, Herring claims appellate counsel was ineffective for failing, on direct appeal, to convince more justices on this Court that cold and calculating was an inappropriate aggravating circumstance. Under the standard expressed in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the test for determining whether counsel rendered ineffective assistance is as follows: "First, the defendant must show that counsel's performance was deficient... . Second, the defendant must show that the deficient performance prejudiced the defense." Id. at 687, 104 S.Ct. at 2064. Neither of these requirements has been established in the record. We note that appellate counsel did convince Justice Ehrlich, as reflected in the dissent, although Justice Ehrlich still concluded the death sentence was appropriate. Since our decision in Herring, this Court, in Rogers v. State, 511 So.2d 526 (Fla. 1987), adopted Justice Ehrlich's view and expressly overruled the application of this aggravating circumstance under the factual situation set forth in Herring v. State, 446 So.2d 1049 (Fla.), cert. denied, 469 U.S. 989, *1179 105 S.Ct. 396, 83 L.Ed.2d 330 (1984). We find that counsel's performance is not deficient simply for failing to convince enough members of this Court on direct appeal that the cold, calculating aggravating circumstance did not apply. Correspondingly, we conclude there was no ineffective assistance of counsel on the initial appeal. In view of this finding, we need not address whether Rogers applies retroactively.
For the reasons expressed, we deny the habeas corpus writ and affirm Herring's conviction and sentence.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, J., concurs in result only.
NOTES
[*] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).